## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS | ) | Case No. 14-10979 (CSS) |
| CORP., et al., | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| ENERGY FUTURE INTERMEDIATE | ) | |
| HOLDING COMPANY LLC AND EFIH | ) | |
| FINANCE INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No: 14-51002 (CSS) |
| | ) | |
| UMB BANK, N.A., AS INDENTURE | ) | |
| TRUSTEE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION[1]

Dated: June 15, 2015

Sontchi, J. _____

---

[1] "The court is not required to state findings or conclusions when ruling on a motion under Rule 12 . . . ." Fed. R. Bankr. P. 7052(a)(3). Accordingly, the Court herein makes no findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## INTRODUCTION[2]

Before the Court is the defendant's[3] motion to dismiss ("Motion to Dismiss") the Complaint for lack of subject matter jurisdiction alleging that the plaintiffs-EFIH Debtors have presented no case or controversy in the Complaint, and thus, the issues are not ripe for adjudication.  The EFIH Debtors' complaint (the "Complaint") seeks declaratory judgment related to prepayment penalties and post-petition interest in connection with the repayment of the PIK Notes.  The Trustee seeks dismissal of the Complaint because the EFIH Debtors have not paid the PIK Notes and the circumstances of such payment, if any, cannot be known at this time; thus, the Trustee asserts that the Complaint is not ripe.

The Court, herein, grants the Motion to Dismiss as there are too many unknown factors relating to the repayment of the PIK Notes to determine whether prepayment penalties and post-petition interest would be due under the terms of the PIK Note Indenture.  However, nothing herein prevents the EFIH Debtors from objecting to the proof of claim filed by the Trustee on behalf of the PIK Notes, which asserts claims for prepayment penalties and post-petition interest.

---

[2]  Capitalized terms not defined herein shall have the meaning ascribed to them *infra*.

[3]  The defendant herein is UMB Bank, N.A., as Indenture Trustee (the "Trustee") for the unsecured 11.25%/12.25% Senior Toggle Notes Due 2018 (the "PIK Notes") pursuant to the terms of an Indenture dated December 5, 2012 (as amended and supplemented, the "Indenture").

## FACTS

### A.  Current Status of Debtors' Chapter 11 Cases[4]

> #### i.    General Background

On April 29, 2014, Energy Future Holdings Corp. ("EFH") and its affiliates (collectively, the "Debtors"), including Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. (together, the "EFIH Debtors"), filed voluntary petitions with the United States Bankruptcy Court for the District of Delaware under chapter 11 of title 11 of the United States Code.

On May 13, 2014, the Office of the Unites States Trustee established an official committee of unsecured creditors to represent the interests of the unsecured creditors of Texas Competitive Holdings Company LLC ("TCEH") and certain affiliates (the "T-side Committee").[5] Thereafter, on October 27, 2014, the United States Trustee formed a statutory committee of unsecured creditors for Energy Future Holdings Corp. and various affiliates (the "E-side Committee").[6]

> #### ii.    Oncor Sale

Thereafter, the Debtors sought bidding procedures to sell the Debtors' economic interest in Oncor Electric Delivery Company LLC ("Oncor").  After revision, the Court

---

[4] The parties agree to the factual history relevant to the matter before the Court, except where noted.

[5] D.I. 420.  The T-side Committee is composed of creditors of Energy Future Competitive Holdings Company LLC ("EFCH"), EFCH's direct subsidiary, TCEH, TCEH's direct and indirect subsidiaries, and EFH Corporate Services Company. This committee represents the interests of the unsecured creditors of the aforementioned debtors and no others.

[6] D.I. 2570.  The E-side Committee is composed of creditors of Energy Future Holdings Corp.; Energy Future Intermediate Holding Company, LLC; EFIH Finance, Inc.; and EECI.  This committee represents the interests of the unsecured creditors of the aforementioned debtors and no others.

approved the bidding procedures.[7]   Based on the schedule contained in the Oncor

bidding procedures, the value of the winning bid for Oncor (if approved) will not be

resolved until, at the earliest, late June 2015.   As the Oncor sale process has not been

completed, the sale structure and value obtained at the same is unknown to the Debtors.

### iii.    Plan Process

Prior to the petition date, the Debtors negotiated a Restructuring Support

Agreement ("RSA") with several parties that laid out an exit strategy and plan structure

for the Debtors' cases.   The RSA provided that the PIK Notes would be paid in full, subject

to various limitations.   However, the Debtors ultimately withdrew from the RSA.

Thereafter, the Court extended the exclusive period for the Debtors to file a plan

through and including October 29, 2015, and the exclusive period to solicit until

December 29, 2015.[8]   On February 11, 2015, the Debtors distributed a Draft Global Term

Sheet ("Draft Term Sheet") to their creditors which embodied the proposed terms of a

plan of reorganization involving all of the Debtors.   On April 14, 2015, the Debtors filed

a proposed plan and disclosure statement.[9]  The Draft Term Sheet, as well as the proposed

plan, propose to pay general unsecured claims against the EFIH Debtors (including the

---

[7]  D.I. 3295.

[8]  D.I. 4634.

[9]  D.I.  4142 and 4243. *See also* solicitation procedures motion and supporting documents at D.I. 4144, 4145, 4146, 4147.  On May 18, 2015, the Court entered an Order approving a scheduling motion related to the Debtors' disclosure statement, as well as, appointment of a mediator.  *See Order (A) Scheduling Certain Hearing Dates and Deadlines, (B) Establishing Certain Protocols in Connection with the Approval of Debtors' Disclosure Statement, and (C) Establishing the Terms Governing Mediation*, D.I. 4497 (May 18, 2015).

PIK Notes) an amount equal to at least principal and accrued but unpaid prepetition interest.  The Debtors assert that the PIK Notes will be paid; however, the only factual questions are the *amount* of the PIK Notes claim and the *form* of such repayment.  The PIK Notes disagree with the Debtors regarding the open factual issues regarding payment of the PIK Notes and believe the following facts are yet unknown: (i) the resolution of any intercompany claims between the T-side and E-side;[10] (ii) the terms required by the first lien creditors of TCEH to consent to and participate in a transaction premised upon the Debtors' optimal tax-free spin structure; and (iii) the length of time that the EFIH Debtors remain in bankruptcy.

### iv.    EFIH First and Second Lien Adversary Complaints

The Debtors are presently engaged in adversary proceedings with the trustees for the EFIH Debtors' first lien[11] and second lien[12] notes over, among other things, the respective trustee's entitlement to payment of prepayment premiums in connection with the repayment – or potential repayment – of their debt.

### a.  First Lien Adversary Action

The EFIH Debtors have redeemed all of the EFIH first lien debt ("First Lien Notes" held by the "First Lien Noteholders" and governed by the "First Lien Indenture").  Thus,

---

[10]  Currently, the T-side committee, the Ad Hoc Group of TCEH Unsecured Noteholders, and the E-side Committee have each filed motions seeking derivative standing to bring various causes of action.  *See* D.I. 3593, 3596, and 3605.  These standing motions are currently scheduled to be heard on June 25, 2015.

[11]  Adv. Pro. No. 14-50363.

[12]  Adv. Pro. No. 14-50405.

the Court heard arguments from the First Lien Notes and the EFIH Debtors regarding prepayment premiums (also referred to herein as "make-whole payments"), among other things, and issued an opinion related thereto.[13]  The Court held that when the EFIH Debtors filed for bankruptcy, the First Lien Notes automatically accelerated and became due and payable immediately.[14]  However, the acceleration of the First Lien Notes was not voluntary, as a result, any payment of the First Lien Notes was not a voluntary prepayment under the optional redemption provision of the First Lien Indenture and did not trigger payment of any make-whole payment.[15]  Thus, the Trustee under the First Lien Indenture was not entitled to a make-whole payment.  However, the Court then held that the First Lien Noteholders had an absolute right to rescind the automatic acceleration of the First Lien Notes;[16] however, the rescission was barred by the automatic stay.[17]  The Court subsequently held a trial on the Trustee for the First Lien Notes' motion for relief from the automatic stay on April 20-22, 2015.  At the conclusion of the stay relief trial, the Court requested additional briefing by the parties and took the matter under advisement.

---

[13] *Delaware Trust Co. v. Energy Future Intermediate Holding Co. LLC (In re Energy Future Holdings Corp.)*, 527 B.R. 178 (Bankr. D. Del. 2015).

[14] *Id.* at 193-94.

[15] *Id.* at 195.

[16] *Id.* at 196.  The Court has entered an order regarding its Opinion on a majority of the issues in Phase I of the First Lien Adversary Action (Adv. Pro. 15-50363, D.I.246); the Trustee for the First Lien Notes has filed a motion pursuant to Bankruptcy Rule 59 ("Rule 59 Motion") to alter or amend the Court's order to clarify that the order was not a "final judgment."  Adv. Pro. 15-50363, D.I. 254.  The Rule 59 Motion has not been submitted to the Court for decision. *See* Adv. Pro. 15-50363.  Furthermore, the Court has not yet issued an opinion or order on the remaining piece of the Phase I First Lien adversary dispute regarding relief from the automatic stay related to the First Lien Trustee's rescission of the First Lien Note acceleration.

[17] *Id.* at 197.

### b. Second Lien Adversary Action

The Trustee for the second lien notes (the "Second Lien Notes" held by the "Second Lien Noteholders" and governed by the "Second Lien Indenture") filed an adversary action seeking damages for a make-whole premium due in connection with the partial paydown of the Second Lien Notes, as well as a declaration that other amounts are due in connection with the Second Lien Notes and any future make-whole that may become due in connection with any subsequent redemption of the Second Lien Notes. A partial paydown of a portion of the Second Lien Notes occurred on March 11, 2015, which makes it distinguishable from the PIK Notes (which have not been paid-down or redeemed).

Thus, the EFIH Debtors are currently litigating pre-payment penalties and post-petition interest regarding the First Lien Indenture and the Second Lien Indenture, and the EFIH Debtors are seeking to litigate similar relief with regard to the PIK Notes through this Declaratory Judgment Action (as defined below), which is the subject of this Opinion.

## B. PIK Notes Adversary Action

### i. The PIK Notes

The EFIH Debtors issued the PIK Notes in the aggregate principal amount of $1,566,234,000 pursuant to the Indenture. The Indenture provides for certain contingent payments to holders of the PIK Notes upon redemption of the PIK Notes.

Section 3.07(a) if the Indenture provides for payment of an "Applicable Premium" if EFIH redeemed the PIK Notes prior to December 1, 2014:

> Notes Make Whole Redemption.    At any time prior to December 1, 2014, the Issuer may redeem, in whole or in part, the Notes at a redemption price equal to 100% of the principal amount of the Notes redeemed plus the Applicable Premium as of, and accrued and unpaid interest (including Additional Interest, if any) to, the date of redemption (the "Redemption Date"), subject to the right of Holders of Notes of record on the relevant Record Date to receive interest due on the relevant Interest Payment Date.[18]

The Indenture continues:

> Noted Optional Redemption.    From and after December 1, 2014 the Issuer may redeem Notes, in whole or in part at the redemption prices (expressed as percentages of principal amount of the Notes to be redeemed) set forth below, plus accrued and unpaid interest (including Additional interest, if any, [sic]) to the Redemption Date . . . if redeemed during the twelve-month period beginning on December 1 of each of the years indicated below:

> | Year | Percentage |
> |---|---|
> | 2014 …………………………… | 105.6250% |
> | 2015 …………………………… | 105.6250% |
> | 2016 and thereafter ………….. | 102.812%[19] |

The Indenture also provides for Post-Petition Interest:

> The Issuer shall pay interest (including post-petition interest in any proceeding under any Bankruptcy Law) on overdue principal at the rate equal to the then applicable interest rate on the Notes to the extent lawful; it shall pay interest (including post-petition interest in any proceeding under any Bankruptcy Law) on overdue installments of interest (including Additional Interest, if any) (without regard to any applicable grace period) at the same rate to the extent lawful.[20]

---

[18]  Indenture § 3.07(a).

[19]  Indenture § 3.07(d).

[20]  Indenture § 4.01.

### ii.    Trustee's Proof of Claim

In October 2014, the Trustee, on behalf of itself and the PIK Noteholders, filed a proof of claim (as identified by the Debtors, Claim No. 6347) (the "PIK Claim").  The PIK Claim asserted a claim for a *minimum* of approximately $1.647 billion "plus interest, fees and other amounts arising in connection with the Indenture (see addendum)."[21]  The PIK Claim states:

> 4.      This Master Proof of Claim *makes claim* to all amount – whether liquidated or unliquidated – due under or relating to the EFIH Senior Toggle Notes or arising under the Indenture on behalf of the Claimant and the Noteholders, including, but not limited to, principal, premiums, the Applicable Premium, pre-payment penalties, make-whole premiums, call premiums, interest, fees, costs, and expenses outstanding as of, and arising from and after, April 29, 2014.[22]

The PIK Claim contains a reservation of rights to amend or supplement the PIK Claim, including "setting forth or changing the basis or amount of the claim . . . ."[23]

### iii.    The PIK Notes Declaratory Judgment Action

In December 2014, the EFIH Debtors commenced this declaratory judgment action against the Trustee by filing the Complaint (the "Declaratory Judgment Action").[24] Specifically, the EFIH Debtors are seeking declaratory judgment that: (i) the PIK

---

[21]  PIK Claim (Form B10) and Addendum to PIK Claim ¶ 4.  *See* Declaration of Jason M. Madron, Esq. in Support of EFIH Debtors' Opposition to UMB Bank N.A.'s Motion to Dismiss, Exh. A ("Madron Declaration").  Adv. D.I. 14.

[22]  Addendum to PIK Claim ¶ 4 (emphasis added).  *See* Madron Declaration, Exh. A.

[23]  *Id.* at ¶ 12.

[24]  Adv. Pro. No. 14-51002, D.I. 1.

Noteholders are not entitled to payment of an Applicable Premium; (ii) the PIK Noteholders are not entitled to an Optional Redemption Price; (iii) the Debtors are not liable for breach of a "no call" provision; (iv) the Debtors did not default in order to prevent the PIK Noteholders from recovering the Applicable Premium, Optional Redemption Price, or any other fee; (v) any claim for the Applicable Premium, Option Redemption Price, No Call Damages, or damages related to an alleged intentional default is disallowed as unmatured interest; and (vi) the PIK Noteholders are not entitled to receive post-petition interest at the rate specified in the Indenture.

### iv.    PIK Notes Motion to Dismiss

The Trustee has moved to dismiss the Complaint for lack of subject matter jurisdiction alleging that the EFIH Debtors have presented no case or controversy in the Complaint, and thus, the issues are not ripe for adjudication.  The Trustee asserts that both the prepayment fee counts and post-petition interest count are premised on contingencies (for example, the filing of a plan and the repayment of the PIK Notes pursuant to such plan) and hypotheticals regarding the solvency of the EFIH Debtors in connection with such potential plan.  The Trustee asserts that the Court cannot rely on factual circumstances that are not yet fixed (i.e. the EFIH Debtors paying the PIK Notes through a plan and/or assuming that the PIK Notes will take certain positions regarding prepayment fee counts and post-petition interest count).

The PIK Notes highlight the following provisions of the Complaint:

> "The Trustee *is expected* to seek payment of a premium *when* the Debtors repay the PIK Notes."[25]

> "Such a claim [for prepayment fee based on intentional default] *would also be* unusual here because the majority of PIK Noteholders voted in favor of a restructuring support agreement . . . ."[26]

> The EFIH Debtors *expect that the Trustee will* claim that the PIK Noteholders are entitled to receive interest on the PIK Notes' outstanding principal . . . at the rate specified in the Indenture."[27]

The EFIH Debtors responded that the issues are ripe because they are seeking to resolve the PIK Claim, the value of which could have significant effects on recoveries to the Debtors' other stakeholders.  In that regard, in addition to the language noted by the Trustee, the Complaint also provides that efficient resolution of the adversary proceeding "is important to move the Debtors' reorganization forward and will provide all parties with clarity beneficial to ongoing plan negotiations."[28]  The Complaint also notes that "[t]o advance this [plan] process, the Debtors seek to resolve a number of discrete legal disputes that *determine the value of claims*."[29]

---

[25] Complaint at ¶ 2 (emphasis added).

[26] Complaint at ¶ 40 (emphasis added).

[27] Complaint at ¶ 44 (emphasis added).

[28] Complaint at ¶ 1.

[29] *Id.* (emphasis added).

The Motion to Dismiss has been fully briefed and the Court heard oral argument on the Motion to Dismiss on May 4, 2015.[30]  At the conclusion of the oral argument, the Court took the matter under advisement.  This is the Court's Opinion thereon.

## ANALYSIS

In the Motion to Dismiss, the Trustee argues that this Court lacks subject matter jurisdiction to hear this matter because the Declaratory Judgment Action is based on contingencies and the discrete issues may or may not ripen into controversies at some point in the future, and thus, deciding these issues is premature, as any decision would be advisory.  The Debtors disagree.

## A.  Burden of Proof

Rule 12(b)(1) of the Federal Rule of Federal Procedure, made applicable to these procedures by Rule 7012(b) of the Federal Rule of Bankruptcy Procedures, allows a party to bring a motion to dismiss for lack of subject matter jurisdiction.  "As a rule, the party invoking the federal court's jurisdiction bears the burden of establishing that the Court has the requisite jurisdiction."[31]  Thus, the EFIH Debtors bear the burden of establishing that the Court has requisite jurisdiction to hear the declaratory judgment action.

---

[30]  During the oral argument, the T-side Committee joined the EFIH Debtors in opposing the Motion to Dismiss.  Transcript of Oral Argument at 154:1-23 (Del. Bankr. May 4, 2015) (Case No. 14-10979, D.I. 4477).

[31]  *Sportsman's Warehouse, Inc v. McGillis/Eckman Investments-Billings, LLC (In re Sportsman's Warehouse, Inc.)*, 457 B.R. 372, 383-84 (Bankr. D. Del. 2011) (footnote omitted).

**B. Subject Matter Jurisdiction**

Article III of the Constitution prohibits federal courts from deciding issues where there is no case or controversy.[32]   Pursuant to 28 U.S.C. § 2201, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."[33]  "Determining whether declaratory judgment jurisdiction exists in a particular case requires consideration of the facts alleged, under all the circumstances, in order to evaluate whether they show that there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[34]   The Supreme Court has instructed that "[t]he disagreement must not be nebulous or contingent but must have taken a fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on its adversaries, and some useful purpose to be achieved in deciding them."[35]

Federal jurisdiction is also limited by the doctrine of "ripeness."  "Ripeness" "determines when a proper party may bring an action.  The function of the ripeness doctrine is to prevent federal courts through avoidance of premature adjudication, from

---

[32]  U.S. Const. art. III, § 2.

[33]  28 U.S.C.A. § 2201(a) (West).

[34]  *PHL Variable Ins. Co. v. ESF QIF Trust by & through Deutsche Bank Trust Co.*, No. CV 12-319-LPS, 2013 WL 6869803, at *3 (D. Del. Dec. 30, 2013) (internal quotation marks and citations omitted).

[35]  *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 244 (1952). *See also Bank of New York v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 307 B.R. 432, 437 (Bankr. S.D.N.Y. 2004) (hereinafter, "*Adelphia*").

entangling themselves in abstract disagreements."[36]    "Ripeness" is a "prudential

limitation on federal jurisdiction, . . . [that] is at least partially grounded in the case or

controversy requirement."[37]    "Central to the ripeness requirement is that courts should

not endeavor to resolve contingencies that may or may not occur as expected or may not

happen at all."[38]

The Third Circuit Court of Appeals has focused on three factors to aid in

determining whether a declaratory judgment action is ripe: (i) adversity of the interest of

the parties, (ii) the conclusiveness of the judicial judgment, and (iii) the practical help, or

utility, of that judgment.[39] Each of these foregoing factors will be discussed in turn below.

However, these factors are "not exhaustive of the principles courts have considered in

evaluating ripeness challenges."[40]

### i.    *Adversity of Interest of the Parties*

#### a.  **Parties' Arguments**

In the case *sub judice*, the Trustee argues that the EFIH Debtors' Declaratory

Judgment Action is based on numerous contingencies such as (i) who will propose a plan,

(ii) the treatment of the PIK Notes pursuant to a plan, (iii) whether the proposed EFIH

---

[36] *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1154 (3d Cir. 1995) (citations and internal quotation marks omitted).

[37] *Obusek*, 72 F.3d at 1154 (citations and internal quotation marks omitted).

[38] *Adelphia*, 307 B.R. at 438 (citations, internal quotation marks and alteration omitted).

[39] *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990) (hereinafter "*Step-Saver*").

[40] *Armstrong World Indus., Inc. by Wolfson v. Adams*, 961 F.2d 405, 412 (3d Cir. 1992) (citing *Step-Saver* at 647). *But see Obusek*, 72 F.3d at 1154 ("If we are satisfied that all three [*Step-Saver*] elements are present, the declaratory judgment action is ripe.").

14

Debtors' plan under which the PIK Notes are paid proceeds to confirmation, and (iv) whether or not the Trustee and the PIK Noteholders will object to their treatment in such plan. The Trustee lists numerous scenarios that would alter these contingencies, such as termination of exclusivity, solvency, and terms of a plan, among others. The Trustee argues that each of the uncertainties could have a material effect on the nature of the controversy; thus, the Trustee contends that the parties' interests are not adverse.

The EFIH Debtors' contend that this action is largely an action to liquidate or at least cap the PIK Claim and that such action can be done well in advance of a plan. The EFIH Debtors also argue that in all iterations of proposed restructuring plans – the PIK Notes will be repaid; thus it is consistent with the EFIH Debtors' assertion in the Complaint that that it will make distributions on the PIK Notes. The EFIH Debtors also claim that solvency has no relevance to this dispute – just as it had no relevance in Phase I of the First Lien Adversary Action. The Debtors continue that this dispute centers on how much money one party owes another under the terms of their contract (i.e. how much will it cost to settle the PIK Claim). The EFIH Debtors claim that future events will not determine the fundamental disagreement over how much money is owed under the terms of the PIK Notes Indenture.

The Trustee replies that no dispute has arisen regarding whether and at what rate to pay post-petition interest to unsecured creditors. The Trustee asserts that post-petition interest is a pure solvency issue and thus should be decided in connection with plan

confirmation.  As to pre-payment fees, the Trustee asserts that term sheets and plan proposals are not conclusive that the PIK Notes will be repaid; thus the issue of whether the PIK Notes are even eligible to receive pre-payment fees is not ripe for adjudication. The Trustee asserts that conflicting financial interests alone are not sufficient to create adversity of the parties.

### b.  There is not an actual controversy between the EFIH Debtors and the PIK Noteholders in the Declaratory Judgment Action.

"'For there to be an actual controversy the defendant must be so situated that the parties have adverse legal interests.'"[41]  The Third Circuit has held:

> Though a plaintiff need not suffer a completed harm to establish adversity of interest between the parties, to protect against a feared future event, the plaintiff must demonstrate that the probability of that future event occurring is real and substantial, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.  We have held that a potential harm that is "contingent" on a future event occurring will likely not satisfy this prong of the ripeness test.[42]

However, a plaintiff does not need to establish with "mathematical certainty" that injury will occur nor does the plaintiff need to await actual injury before filing suit.[43]

In *Adelphia*, holders of subordinated debt sought declaratory relief seeking a ruling that the indenture did not require that holders of senior debt be paid in full before any

---

[41]  *Step-Saver*, 912 F.2d at 648 (quoting 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2757, at 582–83 (2d ed. 1983)).

[42]  *Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Engineers, Local Union No. 66*, 580 F.3d 185, 190 (3d Cir. 2009) (citations and internal quotation marks omitted).

[43]  *Obusek*, 72 F.3d at 1154.

distributions to the holders of junior debt when the currency by which plan distributions were made was stock, rather than cash or securities.[44]  Between the filing of the adversary proceeding and hearing on the motion to dismiss for lack of subject matter jurisdiction, among other motions, the debtors filed a proposed plan; however, that proposed plan had not been confirmed.[45]  The *Adelphia* court held that the controversy between the junior and senior lenders was too contingent and speculative to meet Article III requirements.[46]  The bankruptcy court continued that the debtors' plan was a "proposal to its stakeholders, which they may or may not find to their liking."[47]  The bankruptcy court continued that there were too many moving parts (exclusivity, amendments to plan, timing of confirmation hearing, objections, whether or not the court confirmed the plan, among others), and the junior debt holders' concerns could be addressed in the context of the facts as they exist at that time.[48]  The *Adelphia* court held:

> The Court understands, and is sympathetic to, the points made by the [junior debt] . . . holders that an early ruling might facilitate their negotiations; that they would know better what litigation positions they might wish to take if they knew what the outcome would be in this controversy; and that efforts on the part of the Debtors to confirm what would turn out to be an unconfirmable plan would be time consuming and costly. But these points do not confer subject matter jurisdiction where it is lacking, and in any event prove

---

[44] *Adelphia*, 307 B.R. at 433-34.

[45] *Id.* at 436.

[46] *Id.* at 438.

[47] *Id.* at 438.

[48] *Id.* at 439.

> too much.  Because as the Creditors' Committee fairly argues,
> "[w]ere such an argument to carry the day, bankruptcy courts
> would be beset with requests for numerous advisory
> opinions, many of which ultimately would have no practical
> application."[49]

Although *Adelphia* at first blush seems on all squares with the case *sub-judice*, here the

Debtors are seeking to resolve the proper amount (or more accurately, the proper

components) of any amounts to be paid to the PIK Noteholders,[50] not necessarily

determining how the PIK Claim will be treated under any proposed plan.  The case *sub*

*judice* is distinguishable from *Adelphia* where the issue was whether one creditor class

may recover before another class under the terms of their agreement.  Here, the EFIH

Debtors are not seeking to determine how much or the currency of any payment to the

PIK Noteholders, but they are seeking to establish the outside boundaries of payments to

the PIK Noteholders.

The Trustee also refers to *Matter of Trans World Airlines, Inc.*[51] wherein the debtor

sought approval of a settlement where the debtors would solicit the consent of holders of

its new notes to grant a subordinated lien in certain of the assets that comprised their

collateral package.  The settlement contained a provision that in the event of a default on

the new notes a marshalling of assets would be required wherein the senior holders

would be required to satisfy those notes out of certain collateral, leaving other collateral

---

[49]  *Id.* at 440-41 (citations and footnotes omitted).

[50]  Ultimately, the Debtors are seeking to set the "components" of the PIK Claim; i.e., is the PIK Claim comprised of principal, pre-petition interest, prepayment penalties, and post-petition interest *or* is the PIK Claim comprised of a subsection of these components.

[51]  169 B.R. 91, 94 (Bankr. D. Del. 1994).

for the subordinated lien holders pursuant to a settlement.[52]  Although the court allowed

solicitation and the subordinated interest in certain of the collateral, the court did not

approve the marshalling order.  The court held that the rights and obligations of the

parties to be determined with respect to a potential event of default on the notes, the

specific facts concerning the potential default and the proposed marshalling order's effect

upon the holders of the notes must be known.[53]  Thus, as to the marshalling order, the

issue was not ripe for adjudication.  *Trans World Airlines* is similar to the case *sub judice*

because the Debtors have not paid the PIK Notes; thus, the Court does not know the

specific circumstances of the any repayment.[54]

The EFIH Debtors assert that they are seeking declaratory judgment on conflicting

financing interests and a resolution would have significant effect of the settlement

posture of the underlying litigation.  The EFIH Debtors cite *Home Ins. Co. v. Powell*[55]

wherein an insurance company sought a declaration that it had no duties to pay defense

costs or indemnify its insured for liability arising from a separate pending legal

malpractice action.  The *Powell* court held that the insurer's duty to indemnify did not

turn on the results of the underlying litigation but on whether alleged failures to act

---

[52] *Id.* at 93.

[53] *Id.* at 94.

[54] *See also Armstrong World Indus.*, 961 F.2d at 415 (wherein the court held that there was not adversity of interests wherein plaintiffs sought declaratory judgment regarding whether an antitakeover statute's control-share acquisitions and disgorgement provisions were applicable *if* there was a takeover attempt offer).

[55] *Home Ins. Co. v. Powell*, No. CIV. A. 95-6305, 1996 WL 269496 (E.D. Pa. May 20, 1996) *aff'd*, 156 F.3d 1224 (3d Cir. 1998).

underlying the malpractice litigation should have been included in a prior acts endorsement in the insurance policy. The *Powell* court held that the parties were "sufficiently adverse so as to create an actual controversy for ripeness purposes: they have staked out opposing positions in the instant litigation, they have conflicting financial interests with regard to the issues before this Court, and a declaratory judgment here will likely have a significant effect on the settlement posture of the underlying litigation."[56] *Powell* is distinguishable because here the PIK Notes have not been repaid nor have the PIK Notes objected to their treatment under any proposed plan, it is unknown at this time whether the parties will have conflicting financial interests.

The Trustee argues that the EFIH Debtors are attempting to have this Court preemptively determine that they can cram down the PIK Notes under section 1129 of the Bankruptcy Code by paying post-petition interest at the federal judgment rate. Herein, the Court cannot determine when or the percentage of recoveries, if at all, the PIK Notes would receive under any plan.

### c.  Conclusion

As there are multiple contingencies that must be resolved prior to the determination of prepayment penalties and post-petition interest, looking at the Complaint alone, the Court finds that the parties do not have, as of yet, adversity of interests. At this time, the Debtors have only filed a plan, but this plan is just a proposal

---

[56] *Id.* at *7.

to the parties, the Court has not confirmed the plan nor does the Court know whether the parties will vote in favor of the plan.  The proposals made by the EFIH Debtors are not enough, at this time, to create adversity of interests.

### ii.    Conclusiveness of the Judicial Judgment

#### a.  Parties' Arguments

The Trustee argues that the Complaint is based on a hypothetical scenario – repayment of the PIK Notes through a debtor-sponsored plan that results in the Trustee asserting specific arguments and claims.  The Trustee urges that any opinion on these matters could be rendered idle or incorrect because later factual developments changed or eliminate the issues to be decided.  Thus, the Trustee asserts that the EFIH Debtors are unable to satisfy the conclusiveness of judgment prong.

The EFIH Debtors respond arguing that a judgment that declares the parties' rights under the Indenture (i.e. whether a make-whole payment is owing) does not have to immediately affix the amount of the damages owed.  The EFIH Debtors continue that all of the parties in interest in these cases will rely upon the resolutions of currently pending proofs of claim, including the PIK Claim.

The Trustee replies that the Complaint is *not* a claim objection and that the Trustee has not yet asserted an entitlement to prepayment penalties or post-petition interest because events that would give rise to such claims have not yet occurred and may never occur.  The Trustee asserts that they only reserved their rights to amend the PIK Claim to

file prepayment penalties and post-petition interest – and that a debtor cannot object to a

reservation of rights in a claim.  The Trustee asserts that the EFIH Debtors must wait until

the Trustee amends its claim to add prepayment penalties and post-petition interest to

object to the then amended PIK Claim.  The Trustee continues that post-petition interest

is not properly asserted in a proof of claim, rather it is a byproduct of whether a solvent

debtor's plan satisfied the confirmation requirements of Bankruptcy Code section 1129.

### b.  Judgment could not be conclusive at this time.

In the second *Step-Saver* factor, the Court must

> determine whether judicial action at the present time would
> amount to more than an advisory opinion based upon a
> hypothetical set of facts.  Predominantly legal questions are
> generally amenable to a conclusive determination in a
> preenforcement context, so long as Article III standing
> exists.[57]

"Absent a set of concrete facts, a declaratory judgment itself would be a contingency, and

application of the judgment to actual controversies that arise later would be an 'exercise

in futility.'"[58]

Herein, the EFIH Debtors are seeking to determine certain legal questions relating

to the PIK Notes Indenture.  The Trustee relies on *Grace Holdings* wherein the plaintiff

sought a declaration in 1995 that the defendant must redeem preferred stock and pay all

---

[57] *Pittsburgh Mack Sales & Serv.*, 580 F.3d at 190-91 (citations, internal quotation marks and alteration omitted).  *See also Grace Holdings, L.P. v. Sunshine Min. & Ref. Co.*, 901 F. Supp. 853, 862 (D. Del. 1995) (emphasis added; citations omitted).

[58] *Grace Holdings*, 901 F. Supp. at 862 (citations omitted).

of the then accrued and unpaid dividends on or before July 31, 2000.  The *Grace Holdings*

court held that it lacked "the prescience to discern . . .  whether in fact there will be any

accrued but unpaid dividends on that date; no one knows if this circumstance is certain

to occur.   Additionally, over the next five years, any number of other events could

transpire that would nullify any prospective court order."[59]

Although, in fact, the Court could determine that pursuant to the terms of the PIK

Notes Indenture, that no prepayment penalties are due as in the litigation with the First

Lien Trustee; here the Debtors have not repaid the PIK Notes, and at this time it is

unknown when and if the EFIH Debtors intend to repay the PIK Notes.  Although in

every iteration of the Debtors' proposed resolutions of these cases the PIK Notes are

repaid, these proposals are not sufficiently complete for the Court to be able to provide

conclusive judgment.

### c.  Conclusion

Without more information concerning the repayment of the PIK Notes, the EFIH

Debtors are unable to satisfy the conclusiveness of judgment prong.

### iii.    *Practical Help, or Utility, of that Judgment*

### a.  Parties' Arguments

The Trustee argues that any ruling on the issues in the Complaint will not cause

the Debtors to behave differently (i.e. the EFIH Debtors will not repay or refuse to pay

---

[59]  *Id.*  (citations omitted).

the PIK Notes based on the Court's ruling).  Furthermore, as a practical matter, the Trustee asserts that litigating all the potential claims and arguments that could arise upon repayment through a chapter 11 plan would be inefficient use of the parties' and the Court's resources.  The Trustee asserts that the only benefit the EFIH Debtors have identified is giving the parties clarity beneficial to ongoing plan negotiations.  The Trustee believes that this will lead to piecemeal litigation to adjudicate confirmation issues preemptively could delay these cases.

The EFIH Debtors respond that any judgment would be conclusive because the Complaint is designed to clarify the legal relationship between EFIH and the Trustee.  The EFIH Debtors continue that a declaration of the parties' rights under a contract does not have to immediately affix the amount of the damages owed.  The EFIH Debtors assert that they are asking the Court to determine certain legal questions relating to the Indenture governing the PIK Notes.

The Trustee replies that the PIK Notes have not been repaid and may never be repaid, as such, there would be no utility in litigation any pre-payment penalties when there is not guarantee that the PIK Notes will be repaid.  The Trustee replies that the EFIH Debtors have failed to identify any decisions they face that will hinge on resolving the post-petition interest counts.[60]  The Trustee replies that the *only* precursor to post-petition

---

[60]  The Trustee cites to *In re Nortel Networks, Inc.* wherein Judge Gross, along with the Canadian court hearing the cross-border cases, was scheduled to hear a pre-confirmation objection to decide whether and at what rate to award post-petition interest under an indenture.  Prior to the scheduled hearing, Judge Gross adjourned the objection determining that it was not ripe prior to a determination of solvency.  *In re Nortel Networks, Inc.*, Case No. 09-10128(KG) (Bankr. D. Del. Nov. 15, 2013) (D.I. 12399).  Although Judge

interest is solvency, so the parties do not know whether any interest savings will actually be available for distributions to interest holders.  The Trustee continues that other events will have an even great impact on post-petition interest, such as the results of the Oncor sale, if any.

       **b.  There is no practical help or utility in deciding the declaratory judgment counts at this time.**

In the third *Step-Saver* factor, the Court evaluated whether the plaintiffs are trying to "preserve the status quo before irreparable damage was done, and a case should not be considered justiciable unless the court is convinced that by its action a useful purpose will be served."[61]

> As Congressman Gilbert remarked in debate, "[u]nder the present [pre-Declaratory Judgment Act] law, you take a step in the dark and then turn on the light to see if you stepped into a hole.  Under the declaratory judgment law you turn on the light and then take the step." [62]

---

Gross declined to hear the post-petition interest issues, the Canadian court went forward with the hearing and issued an order regarding the objection.  However, thereafter, Judge Gross agreed to hear the post-petition interest dispute despite his prior ruling.  *In re Nortel Networks, Inc.*, 522 B.R. 491, 507 (Bankr. D. Del. 2014).  Judge Gross, along with the Canadian Court, entered a scheduling order related to whether the bondholders could receive any amount under the indentures in excess of the outstanding principal debt and prepetition interest.  Case No. 09-10138, D.I. 13910.  The parties eventually settled their post-petition interest dispute and Judge Gross issued an opinion approving that settlement.  *In re Nortel Networks, Inc.*, 522 B.R. 491.  The Trustee urges this Court that Judge Gross' order adjourning the objection on ripeness grounds is akin to the ripeness issues being raised in the case *sub judice*.  This Court has a very small snap-shot of the complicated, cross-border *Nortel Networks* cases and the post-petition interest dispute therein and is disinclined to rely on a one-page order adjourning an objection as heavily as the Trustee suggests without additional information and context which is unnecessary given this Court's ruling on the Motion to Dismiss.

[61] *Step-Saver*, 912 F.2d at 649 (citations, internal quotation marks and alterations omitted).

[62] *Id.* at 649-50 (quoting 69 Cong.Rec. 2108 (1928)).

In *Travelers Ins. Co. v. Obusek*,[63] the Third Circuit held that there was utility in determining whether insurance covered attendant medical care services and expenses under a state no-fault motor vehicle insurance act.  The Third Circuit held that the insured "should not have to blindly take the step of incurring an expense that Travelers [the insurance company] may be legally obligated to assume before being told if she has stepped in a hole."[64]

Utility was also found in *Zinn v. Seruga*,[65] wherein the parties were in dispute over the right to use a trademark.  The court held that declaration that the trademark was invalid would clarify the parties' rights as to the use of the trademark, could lead to a compromise by the parties over their respective use of the trademark, as well as potentially aiding the pending litigation.[66]

Herein, the EFIH Debtors assert that a declaration regarding prepayment penalties and post-petition interest will resolve uncertainty surrounding all of the EFIH Debtors' debt tranches and clarify the availability of funds for all of EFIH's stakeholders. However, such amounts for post-petition interest cannot be known until EFIH's solvency is resolved, nor do the parties know whether the PIK Notes will be prepaid triggering the potential prepayment penalty.  The EFIH Debtors' desire to further plan negotiations

---

[63] 72 F.3d 1148 (3d. Cir. 1995).

[64] *Id.* at 1155-56.

[65] No. 05-CV-3572 (WGB), 2006 WL 2135811 (D.N.J. July 28, 2006).

[66] *Id.* at *6.

cannot confer subject matter jurisdiction when there are still too many unknown contingencies. Much like the bankruptcy court stated in *Adelphia*:

> The Court understands, and is sympathetic to, the points made by the Sub Debt holders that an early ruling might facilitate their negotiations; that they would know better what litigation positions they might wish to take if they knew what the outcome would be in this controversy; and that efforts on the part of the Debtors to confirm what would turn out to be an unconfirmable plan would be time consuming and costly. But these points do not confer subject matter jurisdiction where it is lacking, and in any event prove too much.[67]

As the parties and the Court do not know the structure of any confirmed plan, whether and how much the PIK Notes will be paid, or whether the Trustee for the PIK Notes will object to any proposed treatment of the PIK Notes in a plan; it is difficult to see the utility of any declaratory ruling regarding pre-payment penalties and post-petition interest.

### c. Conclusion

As such, in the posture of a Declaratory Judgment Action (and except as set forth below), the Court finds that there is no practical help or utility in determining whether the PIK Notes are entitled to post-petition interest or prepayment penalties when there are various contingencies that could ultimately make this Court's ruling advisory.

---

[67] *Adelphia*, 307 B.R. at 440 (footnotes excluded). *See also In re Antonelli*, No. 91-4-0254-PM, 1992 WL 435879, at *3 (Bankr. D. Md. Nov. 6, 1992) ("While this court understands and appreciates the desire of the Plaintiffs to determine certain tax liabilities prior to confirmation, the issue presented at this point in time is not ripe for adjudication. The court is also mindful that this ruling may delay confirmation efforts and complicate the negotiation process.").

### iv.    Conclusion

As the Court has not found that any of the *Step-Saver* factors have been satisfied in the Declaratory Judgment Action, the Court will dismiss the Complaint as the prepayment penalties and the post-petition interest claims are not ripe for adjudication.

## C.   Declaratory Judgment Action versus Claims Objection

### i.    PIK Claim and Objecting Thereto

The Declaratory Judgment action does not specifically address the PIK Claim; although the Debtors are essentially seeking declaratory judgment on elements asserted in the PIK Claim.   The Trustee makes much ado that the Debtors are attempting to "rebrand" the Complaint as a routine claims objection.   The Trustee argues that the PIK Claim *only* includes a reservation of rights for post-petition interest and prepayment penalties.   As such, the Trustee asserts that the Debtors should not be able to object to the PIK Claim until the Trustee amends the claim to asserts dollar amounts for interest and penalties.

The Court disagrees with the Trustee.   Neither the face of the claim nor the addendum to the claim states that the Trustee is *only* "reserving their rights to later assert" such claims.   The PIK Claim states:

> 4.    This Master Proof of Claim **makes claim** to all amounts – whether liquidated or unliquidated – due under or relating to the EFIH Senior Toggle Notes or arising under the Indenture on behalf of the Claimant and the Noteholders, including, but not limited to, principal, premiums, the Applicable Premium, pre-payment penalties, make-whole

> premiums, call premiums, interest, fees, costs, and expenses
> outstanding as of, and arising from and after, April 29, 2014.[68]

The PIK Claim continues that the Trustee reserves the right to "amend or supplement this Master Proof of Claim at any time and in any respect, including, without limitation, for the purpose of (i) setting forth or changing the basis or amount of the claim described herein in paragraph 4 hereof . . . . "[69] Thus, although, the PIK Claim contains a reservation of rights, the Court does not perceive the language in paragraph 4 to be such a reservation. The above quoted language is a claim to those components of the Indenture, some of which have not been liquidated as of the filing of the PIK Claim. Thus, the PIK claim is partially liquidated, partially unliquidated,[70] and possibly contingent.[71] However, the Complaint does not mention the PIK Claim nor does it object to the PIK Claim as a portion of the relief requested.

---

[68] PIK Claim Addendum ¶ 4 (emphasis added).

[69] PIK Claim Addendum ¶ 12.

[70] *In re RNI Wind Down Corp.*, 369 B.R. 174, 183 (Bankr. D. Del. 2007) (citations and internal quotation marks omitted) ("An unliquidated claim is a claim in which the amount owed has not been determined.").

[71] *Id.* at 182 (citations and internal, quotation marks omitted) ("A claim is contingent where it 'has not yet accrued and . . . is dependent upon some future event that may never happen."). Section 502(e) of the Bankruptcy Code provides, in relevant part, that:

> (1) Notwithstanding subsections (a), (b), and (c) of this section and paragraph (2) of this subsection, the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that—
>
> * * *
>
> (B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution.

11 U.S.C. § 502(e).

As to the Trustee's assertion that the Debtors must wait until the PIK Claim is amended in order to object, the EFIH Debtors do not need to wait until the claim is amended or confirmation of any plan to object to claim or to liquidate claims.  Bankruptcy Rule 3007 governs objection to claims and "provides no time limits for filing objections to claims.  An objection against a claim in bankruptcy may be lodged at any time during the pendency of the case."[72]  Furthermore, Courts have heard similar claims objections relating to prepayment fees and interest.[73]  Thus, nothing in this Opinion limits the EFIH Debtors' ability to object to the PIK Claim or to seek to liquidate such claim.

---

[72] *In re Presque Isle Apartments, L.P.*, 118 B.R. 331, 332 (Bankr. W.D. Pa. 1990).  Furthermore, Section 502(b) provides in pertinent part:

> if [an] objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim . . . and shall allow such claim. . . .
>
> (c) There shall be estimated for purpose off allowance under this section –
>
> > (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case . . . .

11 U.S.C. § 502(b).

[73] *In re S. Side House, LLC*, 451 B.R. 248, 254 (Bankr. E.D.N.Y. 2011) *aff'd sub nom. U.S. Bank Nat. Ass'n v. S. Side House, LLC*, No. 11-CV-4135 ARR, 2012 WL 273119 (E.D.N.Y. Jan. 30, 2012) ( granting a claims objection, in part, holding that pursuant to the terms of the loan documents, the claimant was not entitled to prepayment consideration, among other things); *In re LaGuardia Associates, L.P.*, No. BR 11-19334 SR, 2012 WL 6043284, at *1 (Bankr. E.D. Pa. Dec. 5, 2012)  (granting a claims objection and holding that pursuant to the terms of the promissory note and mortgage, the prepayment fee component of the claimant's claim must be disallowed).

## CONCLUSION

As set forth above, the Court dismisses the Complaint for lack of subject matter jurisdiction because the issues set forth in the Complaint are not ripe for adjudication. However, nothing herein limits the EFIH Debtors from objecting to the PIK Claim.

As order will be issued.